William M. MEYER and Iris Y. Meyer, as Trustees for American Building and Contracting Company (Plaintiffs), Respondents,

v.

Granville L. GAMBLIN and Opal O. Gamblin (Defendants), Appellants.

No. 29584.

St. Louis Court of Appeals.

Missouri.

Feb. 5, 1957.

Motion for Rehearing or to Transfer to Supreme Court Denied March 5, 1957.

Byron E. Roche, St. Louis, George W. Cloyd, St. Louis, co-counsel, for appellants.

Flynn & Parker, Joseph L. Badaracco, St. Louis, for respondents.

ANDERSON, Presiding Judge.

Plaintiffs, William M. Meyer and Iris Y. Meyer, as statutory trustees for the American Building and Contracting Company, brought this action for an amount alleged to be due said corporation under an agreement for the making of repairs and improvements to defendants' property. The defendants counterclaimed for the reasonable value of legal services alleged to have been rendered Meyer and the corporation by defendant Granville Gamblin, and for certain alleged overcharges and secret commissions claimed to have been collected by William Meyer, as agent for the corporation, from subcontractors furnishing labor and material on said job. The trial resulted in a verdict for plaintiffs on this cause of action in the total sum of $2,035.50, and

in favor of plaintiffs on defendants' counterclaim. Judgment was entered accordingly. From this judgment, defendants have appealed.

The American Building and Contracting Company was incorporated in 1945. William M. Meyer was its president. On June 6, 1950, the charter of said corporation was forfeited. At that time William M. Meyer and Iris Y. Meyer were officers and directors of the company, and brought this action as statutory trustees of the corporation.

During the early part of 1949 Meyer attended a meeting in defendant Granville Gamblin's office regarding matters connected with subdivision property belonging to the American Building and Contracting Company. During the course of this meeting said defendant mentioned that a carpenter he had employed had found what looked like termites in his home on Warson Road, and requested Meyer to examine the property. This Meyer did, and discovered a great amount of termite damage to the house which would render necessary a considerable amount of repair. Upon reporting this to Mr. Gamblin, the latter requested Meyer to give him a bid on this repair work. Meyer replied that he could not give such a bid because it would be impossible to know the extent of the repairs necessary until the plaster was removed and the sheetrock in the basement torn off. Meyer testified that he told Gamblin it would have to be a time and material deal, and it was finally agreed that plaintiffs would do the work—defendants to pay all costs of labor and materials, and to pay the corporation a sum equal to 10% of the costs.

The contracting company began the work on August 7, 1949. The repairs were completed the latter part of January, 1950. During that time the company furnished carpenters and laborers who worked on the job. Each week Meyer would send a bill to defendants for the cost of this labor, and defendants would pay same. These bills contained an item for the cost of compensation and liability insurance. The total of these bills amounted to $4,163.70.

Some of the work was performed by subcontractors. Their bills, in the total amount of $10,852.17, were forwarded to defendants and paid. The total paid by defendants to the corporation and to the subcontractors amounted to $15,015.87. No part of the ten per cent commission claimed by plaintiffs under the agreement was paid.

Defendant Granville Gamblin at first admitted that the terms of the agreement were as testified to by Mr. Meyer. Later, however, in his testimony, he denied there was an agreement for the payment of the ten per cent on the overall cost of the project. When asked what the agreement was, Gamblin replied: "That if I would get these liens out of the way so he would save his property in this subdivision, that he would oversee the repairs of this house for me, provided I paid for the labor and materials." The liens referred to were on property in a subdivision belonging to the American Building and Contracting Company which were the source of embarrassment to Meyer and the company. The alleged legal work in connection with these liens was one of the items of defendants' counterclaim.

Gamblin further testified that the last statement in connection with the repair work on the Warson Road property was presented to him by Mr. Meyer on February 4, 1950, at which time he said to Meyer: "Bill, now I want an understanding about what your claim, if you have any—or, what our understanding is going to be about any further claims for the work that you done up on South Warson Road." He further testified that at said time he and Meyer came to an understanding that "all I would owe him would be $662.00 balance;" that he (Gamblin) said " 'Very well * * * I want to review my file, there are some matters that I want to be considered before final payment, Mr. Meyer. Will you write on that statement something to the effect that this is all you are claiming for your

profits, services and commissions on the Warson Road house?', and he (Meyer) said 'Yes,' and he wrote it on there in his handwriting, in my presence." The writing referred to by Mr. Gamblin appears on defendants' Exhibit M, which was the last bill submitted to defendants and is in words and figures as follows:

"Balance due 2/4/50 for profits, services and commissions for remodeling residence and improvements at 2330 Warson Road, City of Ladue, $662.00."

Underneath this writing appears the signature of Mr. Meyer.

Gamblin testified he never paid Meyer the $662 alleged balance due. He stated:

"I didn't owe him because of the fact he had obtained money from me for insurance, when he didn't have insurance on that job. He had got a kick-back from the plasterer—I found out about that. I couldn't find out about any other kick-backs. And then no consideration had been given, as I said before, for the two or three weeks I done in taking his chestnuts out of the fire and enabling him to save the property like he wanted it saved out there. * * * I received no recompense for the two or three weeks that I done that resulted in him and his company saving the Cheshire property out in Webster Groves.

"Q. In other words, your position is that you don't owe him any money, because he owes you for insurance, he owes you for this so-called kick-back of seventy-five or one hundred dollars, and he owes, or his company owes you for legal services? Those are the three reasons you are stating here? A. That's exactly right ·* * *. We agreed upon that in my office on, what was it, February or March 4, 1950? * * * $662.00 was the balance that he was claiming against me, which would have been in full for anything that I would have owed him from the

beginning of the work to then in connection with the Warson Road property."

Gamblin further testified that the figure, $662, was not reached as a compromise.

When Mr. Meyer was asked by his counsel to explain the notation on Exhibit M, counsel for defendants objected that the testimony called for was not relevant or material. This objection was sustained.

Mr. Gamblin gave considerable testimony in support of his claim for compensation for legal services, which was an item sought to be recovered in his counterclaim. This evidence need not be reviewed, for the reason that there is no issue on this appeal involving said matter.

Other facts disclosed by the record will be detailed in connection with the assignments of error to which they relate.

It is urged that plaintiffs' total recovery should have been limited to the sum of $662. This, on the theory that: (1) plaintiffs are bound by Meyer's unexplained judicial admission that said sum was the balance due; and (2) that the evidence shows an account stated between the parties in said amount.

■ An account stated is an affirmative defense. It was not pleaded in this case, and no instruction was requested submitting such issue. For that reason the defense, asserted for the first time in this court, may not be considered. Thompson v. Lindsay, 242 Mo. 53, 145 S.W. 472; Nulsen v. National Pigments & Chemical Co., 346 Mo. 1246, 145 S.W.2d 410.

It is true that Meyer admitted making a notation on defendants' Exhibit M that the balance due was the sum of $662, and as far as plaintiffs' evidence is concerned this admission remains unexplained. However, it remains unexplained because defendants objected to Meyer making any explanation of it. The objection interposed was that any explanation was not relevant or material. Defendants did not request an instruction limiting recovery to said amount,

and, as heretofore stated, there was no plea of account stated. Defendants contend for the first time on this appeal that the amount of plaintiffs' damage should be fixed at the sum of $662. Under the circumstances, defendants are in no position to so contend.

■ It is next urged that defendants are entitled to a credit of $412.62, being an overcharge for insurance. The evidence showed that included in the bills was an amount covering the cost of compensation and liability insurance. It was shown that the company had carried such insurance with the Aetna Insurance Company, but that said insurance was canceled on May 19, 1949. It is on the basis of this evidence that defendants contend that they are entitled to a set-off for the amounts they paid for insurance coverage. However, this was not all the evidence on the matter of insurance. Meyer testified that during the time the work was being done on defendants' house, the contracting company was covered under a policy of the Travelers Insurance Company, taken out for it by a Mr. Sloan who was interested in the company as a creditor. Defendants did not ask for a directed verdict on this item of their counterclaim, but did submit the issue to the jury. We think that, under the evidence, the matter was properly a jury question.

■ The last assignment of error deals with an alleged "finder's fee" or "kickback" of $75 which Meyer received from one Hoefle, a plastering contractor. Meyer admitted receiving this gratuity. It is urged that defendants were entitled to a credit of that amount as a matter of law. Since it was not shown that the plastering costs were enhanced in the amount of said gratuity, we fail to see any merit to defendants' point.

Finding no error in the record, the judgment is affirmed.

MATTHES, J., and JAMES D. CLEMENS, Special Judge, concur.